UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-258-H

PAUL A. LOCKMAN and

KAREN K. LOCKMAN, et al.  PLAINTIFFS

V.

J. K. HARRIS & COMPANY, LLC, et al.  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Paul Lockman and his wife Karen have filed this class action suit against J. K. Harris & Company ("J. K. Harris") for violation of the Lanham Act, the Kentucky Consumer Protection Act, fraudulent misrepresentation, negligence, breach of contract, unauthorized practice of law, and false advertising. They also seek a declaratory judgment that an arbitration provision contained in the Engagement Agreement with J. K. Harris is unenforceable. J. K. Harris has moved to dismiss, arguing that all such claims are arbitrable.

This case presents the interesting question: under what circumstances may a party to a binding arbitration provision pursue a class action within that arbitration? Plaintiffs have asserted both federal and state substantive claims here, but the arbitration issue turns upon questions of Kentucky state law. Disputed facts abound as to the underlying claims, but the relevant facts concerning the arbitration provision are undisputed. For the reasons explained below, the Court finds that arbitration is the proper forum for this dispute.

I.

J. K. Harris provides tax consulting and settlement services. In March 2004, the Lockmans approached J. K. Harris seeking services regarding their IRS tax liability. At that time, the Lockmans entered into an Engagement Agreement with J. K. Harris. On the backside of the agreement is a "Binding Arbitration" provision:

> You agree that any claim, dispute or controversy between [J. K. Harris] and you or claim by either of [J. K. Harris] or you against the other or the employees, agents or assigns of the other and any claims arising from or relating to this Agreement or the relationships which result from this agreement, no matter against whom made, including the applicability of this arbitration clause and the validity of the entire agreement, shall be resolved by neutral binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect that the time the claim is filed. Any arbitration hearing at which you appear will take place at a location near your residence. Rules and forms of the National Arbitration Forum may be obtained and all claims shall be filed at any National Arbitration office, www.arb-forum.com, or P.O. Box 50191, Minneapolis, Minnesota 55405.
>
> This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, Judgment upon the award may be entered in any court having jurisdiction.
>
> NOTICE: BY SIGNING THE ABITRATION [sic] AGREEMENT, THE PARTIES ARE AGREEING TO HAVE ANY DISPUTE ARISING FROM THE AGREEMENT AS DESCRIBED ABOVE, RESOLVED EXCLUSIVELY BY ARBITRATION, AND ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVING ANY RIGHT TO LITIGATE ANY SUCH DISPUTES IN COURT, AND THE PARTIES ARE ALSO WAIVING ANY RIGHT TO A TRIAL BY JURY.

The arbitration clause contains no reference to or explicit waiver of the Lockmans' ability to seek class-wide relief, whether in court or at arbitration.

Subsequent to signing the Engagement Agreement the Lockmans became dissatisfied with the services that J.K. Harris provided. Among their complaints, the Lockmans allege that J. K. Harris failed to conduct an adequate review of their financial situation, misrepresented its

ability to reduce their tax liability, and subjected them to unreasonable delays in handling their case.

On March 14, 2005 the Lockmans filed a Statement of Claim with the National Arbitration Forum against J. K. Harris. After proceeding with the arbitration, in July 2005, they sought to amend the claim to add class allegations. On January 23, 2006, the arbitrator denied that request on the grounds that the NAF's rules did not provide him with jurisdiction over unnamed persons. Four months later, the Lockmans filed their Class Action Complaint with the Court. The arbitration proceeding has been stayed pending resolution of the issues before the Court.

## II.

Defendants have moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(3) for improper venue, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12. "Under Rule 12(b)(6) 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir.2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Court must accept all facts in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Id.*

The Supreme Court has provided guidance for courts presented with arbitration agreements that are ambiguous as to whether they permit class action proceedings. *See Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). When the literal terms of an arbitration agreement are silent or ambiguous, it is the role of the arbitrator rather than the courts to

3

determine whether the contract permits class action proceedings. *Id.* at 451-52. Determining whether the parties agreed to permit or prohibit class actions involves contract interpretation and defining arbitration procedures, and arbitrators are well suited to answering such questions. *Id.* at 452. On the other hand, courts retain the authority to determine whether arbitration agreements are enforceable. *See id.* Unconscionability of terms and enforceability of contracts are matters to be determined by the courts rather than arbitrators. *Burden v. Check into Cash of Kentucky, LLC*, 267 F.3d 483, 492 (6th Cir. 2001) (holding that claims attacking the arbitration clause as unconscionable are to be decided by the court rather than an arbitrator because they deal with the enforceability of the agreement).

Like the arbitration clause in *Bazzle*, the arbitration provision in the J. K. Harris Engagement Agreement contains no mention of class action proceedings whatsoever. Thus whether the arbitration provision permits class action proceedings is an issue of contract interpretation for the arbitrator to decide. *See Bazzle*, 539 U.S. at 452-53. During arbitration, the Lockmans sought to initiate class arbitration by amending their claim. The arbitrator denied that request on the grounds that the National Arbitration Forum's procedural rules do not provide jurisdiction over unnamed persons.[1] He interpreted the agreement in light of the NAF rules referenced in the arbitration provision, and his decision is consistent with the Supreme Court's position that when an arbitration agreement specifies that disputes will be governed by a particular set of rules, those rules become incorporated by reference and are considered terms of the arbitration agreement. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532

---

[1] Unlike the American Arbitration Association, which apparently amended its rules in response to the *Bazzle* decision, the National Arbitration Forum does not permit class arbitration and advertises that fact. *See* Robert S. Safi, *Beyond Unconscionability: Preserving the Class Mechanism Under State Law in the Era of Consumer Arbitration*, 83 TEX. L. REV. 1715, 1737 (2005).

U.S. 411, 419 n.1 (2001).

III.

Defendants argue several reasons why this Court should dismiss Plaintiffs' complaint prior to reaching the merits of whether it is unconscionable to bar a class action arbitration.

Defendants' first argument is that Plaintiffs have waived their ability to challenge the validity and scope of arbitration agreement by executing the Engagement Agreement, filing a claim with NAF, and pursuing that claim in arbitration for over one year. It is true that by participating in an arbitration proceeding without reservation a party waives his or her right to question the arbitrability of a grievance in a court. *See, e.g., Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am.*, 440 F.3d 809, 813 (6th Cir. 2000). However, the Lockmans are not challenging the arbitrator's authority to determine the meaning of the arbitration clause or whether a particular claim is within its scope. Nor are they seeking to vacate the arbitrator's decision. Rather, they are challenging the enforceability of the agreement itself, an analysis which this Court may properly make. A ruling by a court on the issue of unconscionability would have been premature prior to an arbitrator's finding that the Engagement Agreement prohibits class action proceedings. *See Pacificare Health Systems, Inc. v. Book*, 538 U.S. 401, 406-07 (2003) (refusing to decide whether an ambiguous arbitration agreement was enforceable before an arbitrator had construed the terms of the agreement). Had the Lockmans first sought a ruling as to the unconscionability of their ambiguous agreement, this Court's proper response should have been to compel arbitration so that the agreement could be interpreted. The issue of unconscionability and enforceability of this agreement is separate and distinct from the interpretation of the agreement which was properly decided by the arbitrator.

Next, Defendants say that the Lockmans are judicially estopped from arguing that the arbitration clause is unconscionable. During arbitration, they correctly argued that the exclusive authority to construe an arbitration agreement lies with the arbitrator. That argument will not prevent them from arguing that the Court has authority to determine enforceability of the agreement. Moreover, the Lockmans reserved the right to claim unconscionability when they argued "should the forum interpret the arbitration agreement in the manner that precludes the Lockmans from pursuing their class claims, the contract would then be both procedurally and substantively unconscionable and thus unenforceable."

Consequently, the Court concludes that no legal principle bars it from considering whether the arbitration agreement is enforceable.

IV.

The Lockmans argue that since the Engagement Agreement is silent as to class action proceedings, any prohibition on the right to bring such proceedings was concealed and thus unconscionable. Essentially, they argue that a prohibition on class proceedings in the absence of an explicit waiver of that right renders the agreement unconscionable. In evaluating the validity of an arbitration agreement, courts apply ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Accordingly, the Court looks to Kentucky law for an answer.

In Kentucky, an unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. Ct. App. 2001). Kentucky courts have acknowledged the distinction between procedural and substantive

6

unconscionability when determining whether a contract is enforceable. *See, e.g., id.* at 334 n.22 (citing *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3rd Cir. 1999)). Procedural unconscionability, or "unfair surprise", pertains to the process by which an agreement is reached and the form of the agreement. *Id.* Substantive unconscionability refers to contractual terms that unreasonably or grossly favor one side and to which the disfavored party does not assent. *Id.*

No Kentucky court has considered the procedural question of whether a party to an arbitration agreement is entitled to pursue a class action absent a provision allowing it. However, all federal courts and some state courts have held that the Federal Arbitration Act, 9 U.S.C. § 1-307 (2007), requires enforcement of agreements precisely as written. The Sixth Circuit has held that a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation. *Am. Centennial Ins. Co. v. Nat'l Cas. Co.*, 951 F.2d 107, 108 (6th Cir. 1991). If a district court in this circuit is precluded from consolidating arbitration proceedings, it is certainly precluded from compelling to arbitration a class action, which would require the consolidation of claims of both known and unknown parties. The Seventh Circuit came to the same conclusion, finding no meaningful basis to distinguish between the failure to provide for consolidated arbitration and class arbitration. *Champ v. Siegal Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995). The court held that by assenting to an arbitration agreement, parties give up certain "procedural niceties" available in court, such as the ability to pursue a class action. *Id.* Therefore, in these circumstances, silence regarding any procedures for or even the availability of class arbitration is best construed as a prohibition of it. *See* Joshua S. Lipshutz, *The Court's Implicit Roadmap: Charting the Prudent Course at the Juncture of Mandatory Arbitration Agreements and Class*

*Action Lawsuits*, 57 STAN. L. REV. 1677, 1697-98 (2005). This Court believes that Kentucky courts would adopt the same logic followed by other state and federal courts. Consequently, the Court concludes that the Engagement Agreement is not procedurally unconscionable.

Whether the Engagement Agreement is substantively unconscionable seems to be an easier question. Plaintiffs are able to vindicate all of their claims in the NAF arbitration proceeding, and the alleged dollar amount of their individual claims against J. K. Harris of over $150,000 is sufficiently high to stand alone. Even if the Engagement Agreement is held to limit their recovery due to a limitations of liability clause, the resulting claim for $3500 is high enough to arbitrate individually.

Plaintiffs point to a recent decision from the federal district court in Massachusetts, *Skirchak v. Dynamics Research Corp., Inc.*, 432 F.Supp.2d 175 (D. Mass. 2006), which found an arbitration agreement baring class actions unconscionable. However, that case is inapplicable for two reasons. First, the suit was based upon an alleged violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, which the Court noted provides for collective actions, indicating that "Congress implicitly recognized that because each employee's damages may be insubstantial, employees may lack the financial incentive or resources to bring suit individually, and that absent a mechanism for class actions there would be a substantial risk that FLSA violations would not be redressed." *Skirchack*, 432 F.Supp.2d at 179. Moreover, the rushed adoption of the Dispute Resolution Program, including the use of e-mail to notify employees of the drastic change in policies, created significant notice problems. The court held that the plaintiffs were not aware of the new Dispute Resolution Program and therefore had no meaningful choice as to acceptance. *Skirchak* is thus wholly inapplicable to the case at bar,

8

which does not involve a statute granting a right to class actions, is based on claims for a substantial sum of money, and concerns an agreement which would reasonably give notice of Plaintiffs' right to seek redress in arbitration.

For all these reasons, this Court concludes that in these circumstances it is not unconscionable for the arbitrator to deny Plaintiffs' request for a class action arbitration.

V.

The Court declines to award monetary sanctions as urged by the Defendants. A district court has the inherent authority to impose sanctions on a party when their complaint lacks a reasonable basis. *See, e.g., First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 502, 520-21 (6th Cir. 2002). The Court finds no evidence of bad faith on the part of the Plaintiffs in arguing this controversial issue. Courts have disagreed as to how to proceed when arbitration agreements are silent on the availability of class proceedings, *see* Lipshutz, *The Court's Implicit Roadmap*, 57 STAN. L. REV. at 1697-98, and the complaint does not lack a reasonable basis.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is SUSTAINED and Plaintiffs' complaint for declaratory judgment is DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record